UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

STEPHEN SIMONI,
    Individually and on behalf : **ELECTRONICALLY FILED**
    of all others similarly :
    situated, :
      :
    Plaintiffs (collectively, :
      **"Consumers"**), : Hon. _____
vs. :
      : Civ. Action No._____
UNITED AIRLINES HOLDINGS, INC., :
UNITED AIRLINES, INC., : CLASS ACTION
JPMORGAN CHASE BANK, N.A., : COMPLAINT
JPMORGAN CHASE & CO., and :
DOES 1 through 10, inclusive, :
      :
    Defendants (collectively, :
      **"Company"**). : **JURY TRIAL DEMANDED**
_____ :

## UNITED AIRLINES ENTERS THE CREDIT CARD BUSINESS IN NEW YORK BY PARTNERING WITH JPMORGAN CHASE TO FRAUDULENTLY SOLICIT PURCHASES OF CREDIT CARDMEMBERSHIPS

Plaintiff Stephen Simoni (**"Consumers"** or **"Plaintiffs"**), Individually and on behalf of all others similarly situated, hereby allege as follows:

1. Defendants JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co. (collectively, **"JP Morgan Chase"**) are corporations incorporated in Delaware and headquartered in New York that market and sell, *inter alia*, banking services and credit cardmemberships throughout the world.

2. Defendants United Airlines, Inc. and United Airlines Holdings, Inc. (collectively, **"United"**) are corporations incorporated in Delaware and headquartered in

1

Illinois that market and sell, *inter alia*, credit cardmemberships and airline travel throughout the world.

3. United and Chase, along with the Doe defendants, are collectively referred to here throughout interchangeably as **"Defendant," "Defendants,"** or **"Company."**

4. United Airlines entered the credit card business by, *inter alia*, partnering with JP Morgan Chase to fraudulently solicit purchases of credit cardmemberships.

5. United Airlines thereby now competes with credit card issuers in its ongoing effort to generate earnings from, *inter alia*, credit cardmembership annual fees, cash advance fees, accrual of interest on unpaid account balances, late fees, foreign-purchase transaction fees, and commissions from third parties who accept Company credit cards for payment.

6. United Airlines further generates earnings by also competing with restaurants and other venues with its "United Card Events from Chase," by which it offers purported "once-in-a-lifetime experiences" "exclusively for United" cardmembers who "pay[] with [the United] card" for distinctly **non-airline** events including celebrity meet and greets[,] private culinary and cultural events, and behind-the-scenes previews to the worlds of sports and fashion," such as the upcoming and already sold-out January 19, 2022 "Evening with Chef Ludo Lefebvre at Chez Maggy" that includes a "'French 101' cocktail and hors d'oeuvres reception, [m]ulti-course seated dinner with wine pairings,

and a [c]ustom gift bag"——all at a restaurant situated *on the ground*.

7. Plaintiffs bring this action to challenge the Company's ongoing knowing and systematic practice in fraudulently inducing consumers to purchase Company credit cardmemberships and charge specified purchases on the Company-issued credit card.

8. All of the claims asserted herein arise out of Company's activity and are a common fact pattern as to each member of the Class defined below.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. section 1332(d)(2) in that the matter in controversy of all class members' claims together aggregate more than $5,000,000, exclusive of costs and non-breach interest, the number of class members exceeds one hundred, and Consumer resides outside New York.

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. section 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims referenced herein occurred in and/or were targeted to cause damages in this District where JP Morgan Chase's principal place of business is situated and where United and JP Morgan Chase partnered, *inter alia*, to solicit

3

and issue the subject credit cardmemberships and wrongly deny the promised "automatic[]" "credits" for onboard purchases of food and WiFi access on Company flights.  This Court also has jurisdiction over United and JPMorgan Chase in this action because United and JPMorgan Chase market and sell the subject cardmemberships to New York residents.

## OTHER PARTIES

11.   Plaintiff (**"Consumers"** or **"Plaintiffs"**) is an adult male who had purchased a credit cardmembership from Company and then charged a purchase on the subject credit card during a Company flight.

12.   Except as described herein, Plaintiffs are ignorant of the true names of Defendants sued as Does 1 through 10, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names.  Plaintiffs will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

13.   At all times herein mentioned, United, JPMorgan Chase, and/or the Doe Defendants, and each of them, were an agent or joint venturer of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized

the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

14.  Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

15.  At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

## FACTUAL ALLEGATIONS

16.  Plaintiff was solicited by Company in or about October 2021 to purchase a one-year Company credit cardmembership for two hundred and fifty dollars ($250.00) in reliance upon the Company's promise, *inter alia*, that the first one hundred and twenty-five dollars ($125.00) of purchases made during the year of cardmembership on Company products and services, including onboard purchases of food and WiFi access on Company flights, would be "automatically"

"credit[ed]", which Company detailed—and continues to detail—as follows (emphasis added):

> **"$125 Annual United Credit:** A statement credit will automatically be applied to your account when your card is used for United purchases, up to an annual maximum accumulation of $125. Annual means the year beginning with your account open date through the first statement date after your account open date anniversary, and the 12 monthly billing cycles after that each year. Qualifying United purchases include airline tickets purchased from United and the following purchases made from United: seat upgrades; Economy Plus®; *inflight food, beverages and Wi-Fi*; baggage service charges or other United fees. United Card Events from Chase purchases will also qualify.  United tickets booked through some discount travel websites or as part of a third-party travel package will also not qualify. Statement credit(s) will post to your account the same day your United purchase posts to your account and will appear on your monthly credit card billing statement within 1-2 billing cycles. The Annual United Credit will be issued for the year in which the transaction posts to your account. For example, *if you pay for Wi-Fi, but United does not post the transaction until after the current annual period ends, the cost of the Wi-Fi will be allocated towards the following year's Annual United Credit maximum of $125*."

17.  Company has a history, and ongoing practice, of soliciting the purchase of Company credit cardmemberships and the charging of specified purchases on Company credit cards by promising that the subject purchases will be "automatically" "credit[ed]," reimbursed, and/or otherwise not due, payable, nor paid by the cardmember if certain conditions are met.

18.  Plaintiff relied on Company's promise by applying for cardmembership.  Plaintiff was granted cardmembership, was charged the Company card's two hundred and fifty dollars annual fee ($250.00) on November 1, 2021, and paid it in continuing reliance upon the Company's promise.

19.  Plaintiff further relied on Company's promise by purchasing WiFi access for $18.99 on a November 10, 2021 Company flight.

20.  Company failed to reimburse the $18.99, which Plaintiff was then required to pay as part of his credit card monthly statement in order to avoid interest, late fees, penalties, and reporting of purported unpaid "debt" to credit rating agencies.  Plaintiff thereby paid for the WiFi

access instead of the charge being "automatically" "credit[ed]" as had been fraudulently promised by Company.

21. Company has failed to credit the subject charge despite Company being explicitly informed that such charges had wrongfully not been credited by, *inter alia*, a prior lawsuit filed against Company by the undersigned in a different jurisdiction[1] involving the same subject and, upon information and belief, complaints from multiple Company cardmembers concerning the same subject.

## CLASS ALLEGATIONS

22. Consumer brings all his Causes of Action on his own behalf and on behalf of the Class pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the Rule.  The Class is defined as follows:

> All individuals who within the past six years made one or more charges on a JP Morgan Chase-issued credit card in the United States for products and/or services, which charge(s) was/were required to be automatically credited pursuant to either (i)the $125 Annual United Credit and/or (ii) any other one or more JP Morgan Chase promises, but was/were not.

---

[1] The two cases may be coordinated with Defendants as indicated and subject to the approval of the two Courts in order to ensure efficient and non-duplicative litigation.

7

       Excluded from the Class are: (1) employees of the Defendants, including their officers or directors; (2) Defendants' affiliates, subsidiaries, or co-conspirators; and (3) the Court to which this case is assigned.

23. Plaintiff does not know the exact number of Class members because such information is in the exclusive control of the Defendants. However, Plaintiff believes that due to the nature of the trade and commerce involved and the identical language utilized in Company's solicitation for credit cardmemberships, Class members are sufficiently numerous, most likely many thousands of consumers, such that joinder of all Class members is impracticable. The information as to the identity of the Class members can be readily determined from records maintained by Company, because all cardmemberships and charges of purchases are recorded in Company's written and electronic records.

24. Plaintiff's claims are typical of, and not antagonistic to, the claims of the other Class members because Plaintiff was injured by Defendants' practices and by asserting his claims, Plaintiff will also advance the claims of all members of the Class who were damaged by the same wrongful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

25. The common legal and factual questions which do not vary from Class member to Class member, and which may be determined without reference to individual circumstances of

any Class member, include, but are not limited to, the following:

    a. Did Company fraudulently solicit the purchase of JP Morgan Chase credit cardmemberships by falsely stating that specified purchases on the Company credit cards would be "automatically" "credit[ed]" while intending not to automatically credit such charges?

    b. What is the appropriate measure of damages for Company's wrongful conduct?

    c. Was Company's policy deliberate such that punitive damages may be awarded? and

    d. Are Plaintiff and the Class Members entitled to the injunctive and equitable relief requested herein to enjoin Company's continuing wrongful action?

26. These common questions and others predominate over questions, if any, that affect only individual members of the Class.

27. The claims of the representative Plaintiff are typical of the claims of the Class. There are no material conflicts with any other member of the Class that would make class certification inappropriate. Plaintiff and counsel will fairly and adequately represent the interests of the Class.

28. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of

all Class members is impracticable.  Even if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome on the courts if individual litigation of numerous cases would proceed.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

29. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

30. Injunctive relief is appropriate as to the Class as a whole because Defendants have acted or refused to act on grounds generally applicable to the Class.

31. Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including, but not limited to, providing Class members with a method for the redress of claims that may otherwise not warrant individual litigation: Individual consumers typically lack the resources, ability, and knowledge to legally pursue their respective remedy of a rightful refund.

## FIRST CAUSE OF ACTION
### (FRAUD)

32. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

33. Company knowingly and deliberately fraudulently solicited a purchase of a Company credit cardmembership by falsely promising Plaintiff that he would "automatically" receive a "credit" of the first one hundred and twenty-five dollars of specified Company charges made to the Company-issued credit card while Company intended not to automatically credit the purchases as promised.

34. Plaintiff relied on Company's promise by applying for a Company credit cardmembership and paying the Company the two hundred and fifty dollar ($250.00) annual fee for the credit cardmembership.

35. Plaintiff further relied on Company's promise by making a purchase on the Company credit card for WiFi access in the amount of nineteen dollars and ninety-nine cents ($18.99) onboard a Company flight.

36. Company failed to credit Plaintiff's credit card account for the $18.99 charge even though Plaintiff had total annual Company charges of less than the $125.00 limit, which mandated that the $18.99 charge be automatically credited.

37. Because Company failed to credit the $18.99, Plaintiff was thereby required to pay it as part of his credit card monthly statement in order to avoid interest, late fees, penalties, and reporting of purported unpaid "debt" to credit rating agencies. Plaintiff thereby paid

(i) the $250.00 credit cardmembership annual fee and (ii) the $18.99 WiFi service charge, neither of which charge he would have incurred nor paid for had he been aware that Company intended not to automatically credit the specified charges.

38. ***Company's wrongful behavior continues to the present.*** Company has failed to credit the subject charge despite Company being explicitly informed that such charges had wrongfully not been credited due to, *inter alia*, a prior lawsuit filed against Company involving the same subject and, upon information and belief, complaints from multiple Company cardmembers concerning the same subject.

39. Plaintiff has been damaged thereby.

### SECOND CAUSE OF ACTION
### (VIOLATION OF N.Y. GEN. BUS. LAW § 349: DECEPTIVE ACTS AND PRACTICES)

40. Consumer repeats and realleges each and every allegation set forth above as if fully set forth herein.

41. Company knowingly and deliberately fraudulently solicited a purchase of a Company credit cardmembership by falsely promising Plaintiff that he would "automatically" receive a "credit" of the first one hundred and twenty-five dollars of specified Company charges made to the Company-issued credit card while Company intended not to automatically credit the purchases as promised.

42. Plaintiff relied on Company's promise by applying for a Company credit cardmembership and paying the Company the two hundred and fifty dollar ($250.00) annual fee for the credit cardmembership.

43. Plaintiff further relied on Company's promise by making a purchase on the Company credit card for WiFi access in the amount of nineteen dollars and ninety-nine cents ($18.99) onboard a Company flight.

44. Company failed to credit Plaintiff's credit card account for the $18.99 charge even though Plaintiff had total annual Company charges of less than the $125.00 limit, which mandated that the $18.99 charge be automatically credited.

45. Because Company failed to credit the $18.99, Plaintiff was thereby required to pay it as part of his credit card monthly statement in order to avoid interest, late fees, penalties, and reporting of purported unpaid "debt" to credit rating agencies. Plaintiff thereby paid (i) the $250.00 credit cardmembership annual fee and (ii) the $18.99 WiFi service charge, neither of which charge he would have incurred nor paid for had he been aware that Company intended not to automatically credit the specified charges.

46. ***Company's wrongful behavior continues to the present.*** Company has failed to credit the subject charge despite Company being explicitly informed that such charges had wrongfully not been credited due to, *inter alia*, a prior lawsuit filed against Company involving the same subject and, upon information and belief, complaints from multiple Company cardmembers concerning the same subject.

47. Plaintiff has been damaged thereby.

48. Statute provides for payment of a minimum of $50.00 per violation and up to three times actual damages per violation.

49. Statute provides for award of attorneys' fees.

50. Consumer also seeks injunctive relief requiring Company to cease its fraudulent solicitation practices.

### THIRD CAUSE OF ACTION
**(VIOLATION OF N.Y. GEN. BUS. LAW § 350:   FALSE ADVERTISING)**

51. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

52. Company knowingly and deliberately fraudulently solicited a purchase of a Company credit cardmembership by falsely promising Plaintiff that he would receive a "credit" of the first one hundred and twenty-five dollars of specified Company charges made to the Company-issued credit card while Company intended not to "credit" the purchases as promised.

53. Plaintiff relied on Company's promise by applying for a Company credit cardmembership and paying the Company the two hundred and fifty dollar ($250.00) annual fee for the credit cardmembership.

54. Plaintiff further relied on Company's promise by making a purchase on the Company credit card for WiFi access

14

in the amount of eighteen dollars and ninety-nine cents ($18.99) onboard a Company flight.

55. Company failed to credit Plaintiff's credit card account for the $18.99 charge even though Plaintiff had total annual Company charges of less than the $125.00 limit, which mandated that the $18.99 charge be credited.

56. Because Company failed to credit the $18.99, Plaintiff was thereby required to pay it as part of his credit card monthly statement in order to avoid interest, late fees, penalties, and reporting of purported unpaid "debt" to credit rating agencies. Plaintiff thereby paid for the WiFi access instead of the charge being "credit[ed]" as fraudulently promised by Company.

57. **Company's wrongful behavior continues to the present.** Company has failed to credit the subject charge despite Company being explicitly informed that such charges had wrongfully not been credited due to, *inter alia*, a prior lawsuit filed against Company involving the same subject and, upon information and belief, complaints from multiple Company cardmembers concerning the same subject.

58. Plaintiff thereby paid (i) the $250.00 credit cardmembership annual fee and (ii) the $18.99 WiFi service, neither of which charge he would have incurred nor paid for

had he been aware that Company intended not to automatically credit the specified charges.

59. Plaintiff has been damaged thereby.

60. Statute provides for payment of minimum of five hundred dollars ($500.00) for each violation of the false advertising statute and up to three times actual damages.

61. Statute provides for award of attorneys' fees.

62. Consumer also seeks injunctive relief requiring Company to cease its fraudulent solicitation practices.

## FOURTH CAUSE OF ACTION
### (BREACH OF CONTRACT)

63. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

64. As a result of Company's breach of the agreement to reimburse the $18.99 charge for WiFi, Plaintiff suffered damages by paying money for service to which he was legally entitled for no financial payment.

65. Plaintiff was also damaged by incurring and paying for the cardmembership annual fee that he would not have paid if Company had not falsely promised to credit the first $125.00 of Company charges.

## FIFTH CAUSE OF ACTION
### (PROMISSORY ESTOPPEL)

66. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

...
...
...

67. As a result of Plaintiff's reliance on Company's promise—which promise Company failed to keep—Plaintiff purchased a one-year card membership breach for two hundred and fifty dollars ($250.00) and WiFi access for nineteen dollars and ninety-nine cents ($18.99).  Plaintiff suffered damages by paying money for (i) a Company credit cardmembership that he would not have purchased without the Company's promise to credit the first $125.00 in annual Company purchases on the subject card and (ii) WiFi services to which he was legally entitled for no financial payment and that he would not have purchased without the Company's promise to credit the first $125.00 in annual Company purchases on the subject card.

68. Plaintiff has been damaged thereby.

### SIXTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

69. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

70. As a result of Company's wrongful activity, Company has received Plaintiff's (i) $250.00 for a credit cardmembership and (ii) 18.99 for Wi-Fi access neither of which charge Plaintiff would have incurred, purchased, nor paid had Plaintiff been informed that Company would not satisfy its legal obligation to credit the first $125.00 in annual Company purchases on the subject card.

71. Company has thereby acquired money by wrongful means that must be disgorged to avoid continued injustice.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

**PRAYER FOR RELIEF**

1. Certification of the proposed Class and notice and claims administration to be paid by Defendants;

2. Statutory damages;

3. Compensatory, general, incidental, and consequential damages according to proof;

4. Special damages according to proof;

5. Punitive damages to punish Defendants for their willful illegal and deliberate contract breaches and to deter others who may otherwise engage in similar willful illegal and deliberate conduct;

6. Restitution and disgorgement according to proof;

7. Injunctive relief against Defendants, and each of them, to prevent future wrongful contract breaches;

8. Prejudgment interest at the maximum legal rate;

9. Costs of the proceedings herein;

10.  Reasonable attorneys' fees; and

11.  All such other and further relief as the Court deems just and proper, the total of which, less interest and costs, will be greater than $5,000,000.00.

Dated:  Jan. 7, 2022

                            Respectfully submitted,

                            By: __/s/_Stephen J. Simoni__
                            STEPHEN J. SIMONI
                            StephenSimoniLAW@gmail.com
                            **SIMONI CONSUMERS**
                              **CLASS ACTION LAW OFFICES**
                            c/o Jardim, Meisner &
                                Susser, P.C.
                            30B Vreeland Road, Ste. 100
                            Florham Park, NJ 07932
                            Telephone:  (917) 621-5795

                            *Counsel for Plaintiff and*
                                *the Proposed Class*


**DEMAND FOR JURY TRIAL**

Plaintiffs on behalf of themselves and all others similarly situated hereby request a jury trial on all claims so triable.

Dated:  Jan. 7, 2022       Respectfully submitted,


                            By: __/s/_Stephen J. Simoni__